IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBBIE OELSCHLAGER, Individually, | ) | CASE NO.: 4:18-CV-3040 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE AN EXPERT WITNESS OUT OF TIME** |
| | ) | |
| EAR, NOSE & THROAT SPECIALTIES, P.C., CHRIS A. CEDERBERG, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Ear, Nose & Throat Specialties, P.C., and Chris A Cederberg, M.D., submit this brief in opposition to Plaintiff's motion that seeks to designate a new standard-of-care expert out of time (ECF No. 79).

## **Factual Background**

Plaintiff filed this lawsuit just under three years ago, on March 14, 2018. (ECF No. 1). This lawsuit arises from healthcare that occurred nearly five years ago, in March 2016. (*Id.*). On May 18, 2018, the Court entered an initial progression order adopting the deadlines set forth in the parties' joint Rule 26(f) report. (ECF No. 16). In the joint Rule 26(f) report, the parties agreed that Plaintiff would (1) identify experts by July 1, 2019; and (2) disclose expert reports by August 1, 2019. (ECF No. 15).

On August 24, 2018, the Court held a planning conference. Following that planning conference, the Court entered a final progression order confirming that Plaintiff shall identify experts by July 1, 2019; and (2) disclose expert reports by August 1, 2019. (ECF No. 24).

In May 2019, Defendants agreed to Plaintiff's request that the progression order be extended to allow more time for Plaintiff to designate expert witnesses, and the Court entered a

new progression order requiring that Plaintiff identify expert witnesses by October 1, 2019, and disclose reports by November 1, 2019. (ECF No. 43 and 46).

In September 2019, Defendants again agreed to Plaintiff's request that the progression order be extended to allow more time for Plaintiff to designate expert witnesses, and the Court entered a new progression order requiring that Plaintiff identify expert witnesses by January 1, 2020, and disclose reports by February 1, 2020. (ECF No. 51 and 57).

In December 2019, Defendants again agreed to Plaintiff's request that the progression order be extended to allow more time for Plaintiff to designate expert witnesses, and the Court entered a new progression order requiring that Plaintiff identify expert witnesses by April 1, 2020, and disclose reports by May 1, 2020. (ECF No. 63 and 65).

In March 2020, Plaintiff again requested that the progression order be extended to allow more time for Plaintiff to designate expert witnesses, and the Court entered a new progression order requiring that Plaintiff identify expert witnesses by July 30, 2020, and disclose reports by August 31, 2020. (ECF No. 66 and 67).

In July 2020, Defendants again agreed to Plaintiff's request that the progression order be extended to allow more time for Plaintiff to designate expert witnesses, and the Court entered a new progression order requiring that Plaintiff identify expert witnesses by September 28, 2020, and disclose reports by October 30, 2020. (ECF No. 68 and 71).

Defendants are required to identify experts by February 26, 2021, and serve expert reports by March 29, 2021. (ECF No. 74).

On October 30, 2020, Plaintiff filed and served a disclosure under Federal Rule of Civil Procedure 26(a)(2) identifying three retained experts, including Kevin Welch, M.D., and purporting to attach "reports" from each expert. (ECF No. 72). Plaintiff's disclosure as to

Dr. Welch did not comply with Fed. R. Civ. P. 26(a)(2). In particular, this rule requires a "a written report—***prepared and signed by the witness***—" for any retained expert. Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Although Plaintiff's other retained experts provided signed reports, Dr. Welch did not. (Compare ECF No. 72-1 at 1-2 and 97-108 *with* ECF No. 72-1 at 120). Instead, Plaintiff provided an unsigned 1-page document purporting to include Dr. Welch's opinions, which was framed as to what "Dr. Welch is expected to testify to." (ECF No. 72-1 at 120).

On January 22, 2021, Plaintiff filed what he styled as a "Motion for a Modified Discovery Schedule." (ECF No. 79). However, in reality, Plaintiff's motion seeks leave to designate a new standard-of-care expert witness out of time *after* an already-lapsed deadline and to relegate Dr. Welch to a role as a "consulting" expert. (ECF No. 79). Plaintiff states that Plaintiff's counsel only discovered a problem using Dr. Welch as a testifying witness when a January 16, 2021 conversation "turned acrimonious over his role in this case." (*Id.* at 1). Plaintiff provides no more information and does not identify any factor that occurred *after* the expert-disclosure deadline that explains why Dr. Welch's position on his "role in this case" changed. (*Id.*).

On January 19, 2021—three days after this "acrimonious" conversation between Plaintiff's counsel and Dr. Welch about Dr. Welch's "role" in the case occurred—Plaintiff filed and served, out of time, a "third supplemental disclosure" regarding his expert witnesses (other than Dr. Welch), providing documents that should have been part of Plaintiff's earlier expert disclosures. (ECF No. 78).

**Argument**

In order to obtain permission to designate an expert witness after the deadline for doing so has passed, Plaintiff must demonstrate both good cause and excusable neglect. Any time a litigant seeks to extend a progression order deadline, the litigant must show good cause under Federal Rule

of Civil Procedure 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). Good cause generally requires a change in circumstance, law, or newly discovered facts. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012).

Moreover, because the relevant deadline has already passed, that is not the only standard applicable here. Federal Rule of Civil Procedure 6(b)(1)(B) governs *any* request to revive an already-lapsed deadline. By its terms, Rule 6 applies to "any time period specified in [the Federal Rules of Civil Procedure], [and] in any local rule or court order." *See* Fed. R. Civ. P. 6. This is a burden in addition to the requirement that Plaintiff show good cause. *See Rivera-Almodovar v. Instituto Socioeconomico Comunitario*, 730 F.3d 23, 26 (1st Cir. 2013) ("In the ordinary course, a litigant who seeks an extension of time must show good cause for the desired extension. See Fed. R. Civ. P. 6(b)(1). But where, as here, the litigant is faced with an expired deadline, more is required: she must show that her failure to request an extension in a timeous manner constitutes excusable neglect."); *Katon v. United States*, No. 5:16-CV-05023-JLV, 2019 WL 1254563, at *2 (D.S.D. Mar. 18, 2019) ("Because Plaintiffs requested to amend their expert disclosures past the deadline, both Rule 16's good cause requirement and Rule 6's excusable neglect standard apply to Plaintiffs' motion.").

The Court should deny Plaintiff's motion because Plaintiff failed to show good cause or excusable neglect. In support of the motion, Plaintiff focuses on the short time that elapsed between when Plaintiff's counsel had a contentious conversation with Plaintiff's expert and when Plaintiff's counsel notified the Court of this conversation and sought leave to replace the expert. This is the wrong focus. The inquiry does not focus on whether Plaintiff's counsel was prompt in disclosing

his decision not to use Dr. Welch as an expert witness; instead, the inquiry focuses on whether Plaintiff's counsel used due diligence in securing expert witnesses (and having necessary communications with these witnesses) *before* the expert-disclosure deadline passed (and before disclosing those expert witnesses). *See Bradford v. DANA Corp*., 249 F.3d 807, 809 (8th Cir. 2001) (primary inquiry is "diligence in attempting to meet the case management order's requirements"); *See also Marolf v. Aguirre*, No. 4:09CV3221, 2011 U.S. Dist. LEXIS 138609, at *14 (D. Neb. Dec. 1, 2011) (unpublished) (in evaluating diligence, inquiry is whether "want or need" of additional expert could have been determined before deadline lapsed).

Plaintiff states that Plaintiff's counsel only discovered a problem using Dr. Welch as a testifying witness when a January 16, 2021 conversation "turned acrimonious over his role in this case." Plaintiff provides no more information and does not identify any factor that occurred *after* the expert-disclosure deadline that explains why Dr. Welch's position on his "role in this case" changed. In other words, Plaintiff's counsel fails to show that Plaintiff acted with reasonable diligence, *before* the progression-order deadline passed, to determine whether there was agreement on Dr. Welch's role in the case. A party cannot create good cause to designate a new witness after the expert-disclosure deadline by timely designating an expert without taking appropriate steps to agree with that expert on his role in the case *before* designating that expert. Plaintiff had a duty and responsibility to have conversations with Dr. Welch about his "role" in the case long before January 16, 2021.

In considering this point, it is notable that, unlike Plaintiff's other two experts, Dr. Welch did not sign an expert report by the scheduling-order deadline. Instead, Plaintiff provided a one-page, unsigned disclosure written partially in the third person, about what opinions Dr. Welch was "expected" to give. This did not comply with the provisions of Fed. R. Civ. P. 26(a)(2)(B).

Defendants do not know what circumstances led to the failure of Plaintiff to obtain a report complying with applicable rules by the appropriate deadline. That said, it was Plaintiff's responsibility to comply with the provisions of Fed. R. Civ. P. 26(a)(2)(B) and it certainly was Plaintiff's responsibility to use diligence to determine whether there was a dispute about Dr. Welch's role before disclosing his opinions.

Plaintiff's counsel does not point to any circumstances that changed between the expert disclosure deadline and January 16, 2021, explaining why a new conflict or problem developed. Nor does Plaintiff's counsel explain why he could not have, with reasonable diligence, discovered a conflict before the expert-disclosure deadline. Instead, Plaintiff's counsel makes only a vague statement that a conflict developed on January 16, 2021, when a conversation "turned acrimonious over his role in this case." Vague statements of this kind are insufficient to establish either good cause or excusable neglect. Plaintiff has not made a showing that the acrimony that developed was unforeseeable—in other words, that it could not have been foreseen if Plaintiff's counsel had used appropriate diligence in communicating with Dr. Welch about his role in the lawsuit.

Moreover, if acrimony came as the result of Plaintiff's counsel seeking information to make additional expert disclosures regarding Dr. Welch as part of Plaintiff's supplemental disclosures on January 19, 2021, this cannot provide good cause. Plaintiff's supplemental expert disclosures made on January 19, 2021, were out of time and were made without leave. Because it was inappropriate for Plaintiff to be attempting to supplement his expert disclosures past the deadline, any disagreement that arose over discussions about supplemental disclosures cannot provide good cause.

Because Plaintiff does not show good cause, the Court need reach the issue of prejudice to Defendants. *See Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 434 (8th Cir. 2019); *Lowry v.*

*McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008) ("While the prejudice to the nonmovant resulting from the modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines."). However, Defendants *would* be unfairly prejudiced by Plaintiff designating another expert at this late date, and this provides another reason why the Court should deny Plaintiff's motion. The Affidavit of William Tannehill demonstrates that Defendants would suffer prejudice if Plaintiff was allowed to disclose a new expert at this late date because Defendants' litigation strategy has been shaped by Plaintiff's expert disclosures. Reliance on the disclosed opinions of an opposing party's expert to make strategic decisions is cognizable prejudice. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 760 (8th Cir. 2006) (affirming district court decision denying party's request to add new expert when opposing party "selected its own expert witnesses and developed motion and trial strategies based on that expert witness evidence"); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008-09 (8th Cir. 1998) (because defendant had already prepared its summary judgment motion at least partially based on the lack of expert opinion to support plaintiff's claim, the district court did not abuse its discretion in excluding plaintiff's untimely disclosed expert).

Moreover, it is relevant Dr. Welch is Plaintiff's standard-of-care expert. By seeking to designate a new standard-of-care expert, Plaintiff may be attempting—at this late date—not simply to change the identity of his expert but, instead, to change or expand the focus of Plaintiff's liability case. This is improper. Even under circumstances where substituting an expert is appropriate, the substituting party is not permitted to use this as an opportunity to change or expand the disclosed opinions.

In support of Plaintiff's motion, Plaintiff relies on *TIC—The Industrial Company Wyoming, Inc v. Factory Mutual Insurance Company, IMA of Kansas, Inc.*, 4:10 CV 3153, p. 12. (D. Neb. 2012). However, that case is entirely distinguishable. In *TIC*, the Plaintiff's expert reported discovering a conflict of interest. (4:10-cv-03153 at ECF No. 152). The Plaintiff produced an email from the expert disclosing the *specifics* of the expert's conflict of interest *and* noted that knowledge about the specific conflict of interest had been raised by a specific event—questions asked at his deposition. (4:10-cv-03153 at ECF No. 154-2). Here, in contrast, Plaintiff does not identify a conflict of interest or even an unwillingness on Dr. Welch's part to be involved; instead, Plaintiff makes only a vague assertion about disagreement between counsel and Dr. Welch about the nature of his role. Moreover, in *TIC*, the plaintiff specifically represented that it would not seek to disclose any *new* opinions from the expert witness as part of the substitution. (ECF No. 152 at 2). The *TIC* Court there pointed out that when a substitution of an expert is appropriate, the substitute expert will generally be limited to the theories espoused by the former expert. (ECF No. 210 at 14). The decision in *TIC* provides no justification for what Plaintiff seeks to do here—get to start over with disclosing a new standard-of-care expert with new standard-of-care opinions simply because Plaintiff failed to take appropriate steps to—before the expert disclosure deadline—come to an agreement with Dr. Welch about his role in this lawsuit.

**Conclusion**

For the foregoing reasons, Defendants request that the Court deny Plaintiff's request for permission to discloses a new standard-of-care expert out of time.

EAR, NOSE & THROAT SPECIALTIES, P.C.,
and CHRIS A. CEDERBERG, M.D.,
Defendants

By: s/ William L. Tannehill
William L. Tannehill - #16946
WOLFE SNOWDEN HURD AHL
SITZMANN TANNEHILL & HAHN
1248 "O" Street, Suite 800
Lincoln, Nebraska 68508-1424
TEL: (402) 474-1507
FAX: (402) 474-3170
wtannehill@wolfesnowden.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a true and correct copy of the foregoing **Brief in Opposition to Plaintiff's Motion to Designate an Expert Witness Out of Time** was served to the Clerk of the Court using the CM/ECF system on February 3, 2021, which sent notification of the filing as follows:

Jefferson Downing
Keating, O'Gara, Nedved & Peter, PC
530 South 13th Street, Suite 100
Lincoln, NE 68508
jd@keatinglaw.com
*(Attorney for Plaintiff)*

William A. Cirignani
Cirignani, Heller & Harman
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
wac@chhlaw.com
*(Attorney for Plaintiff)*

By: s/ William L. Tannehill
William L. Tannehill